**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**DANIEL K. LEGGETTE**,

      **Movant,**

**v.**                              **Case No. 3:12-cv-00234**
                                       **(Criminal Case No: 3:09-cr-00176-01)**

**UNITED STATES OF AMERICA**,

      **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court is Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 96). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the undersigned respectfully **RECOMMENDS** that Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 be denied and this action be removed from the docket of the Court. Given that the undersigned conclusively **FINDS** that Movant is not entitled to the relief requested, an evidentiary hearing is not warranted. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

## I.    <u>Background</u>

On April 15, 2008, Movant, Daniel K. Leggette ("Leggette") allegedly aided and abetted in the distribution of crack cocaine to two undercover law enforcement officers

who were members of a task force investigating drug-related crimes in Huntington, West Virginia. (ECF No. 84 at 6-7). In early May, the task force began receiving complaints of drug activity in the 800 block of Fifth Street. After spotting Leggette at a residence located in that area, officers obtained a warrant to search Leggette's person. (*Id.* at 7-8). On May 14, 2008, the officers went to a home at 808 Fifth Street to execute the search warrant. Leggette and four other individuals were inside the home. When officers entered the front door of the residence, Leggette attempted to flee out the back door. (ECF No. 81 at 13-14). However, officers posted at the back door saw Leggette and observed him throwing something behind his back as he fled. They apprehended Leggette, searched the area, and located a bag containing four individual baggies of crack cocaine that had a combined weight of 7.54 grams. (*Id.* at 14). Officers also searched Leggette's Cadillac, which was parked at the rear of the residence, and recovered a 9mm pistol and a set of digital scales. (*Id.* at 15). Leggette later admitted that the firearm belonged to him. (*Id.*).

On July 29, 2009, a federal grand jury in Huntington returned a single count indictment charging Leggette with being a felon in possession of a fireman in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[1] (ECF No. 15). A three-count superseding indictment was returned on October 20, 2009. (ECF No. 35). The first count of the superseding indictment charged Leggette with aiding and abetting in the distribution of crack cocaine on April 15, 2008. The second count charged Leggette with possession with intent to distribute 5 grams or more of crack cocaine on May 14, 2008, and the final count restated the felon in possession of a firearm charge. (*Id.*).

---

[1] Docket Numbers are taken from Leggette's underlying criminal action, styled *United States of America v. Daniel K. Leggette,* 3:09-cr-00176-01 pending in this court.

On January 5, 2010, Leggette entered into an agreement with the Government in which he consented to plead guilty to the second count of the superseding indictment in exchange for dismissal of the other two counts. (ECF No. 58). The written agreement contained several provisions relevant to this § 2255 motion. First, Leggette acknowledged that he had read and carefully discussed every part of the agreement with his counsel and understood the terms of the agreement. (*Id.* at 7). He also confirmed the following:

> I further acknowledge that my attorney has advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened me or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

(*Id.*). Next, Leggette agreed to waive his right to appeal his sentence, except on limited grounds, and waived his "right to challenge his guilty plea and his conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255" unless the motion was based upon a claim of ineffective assistance of counsel. (*Id.* at 4-5).

Finally, Leggette signed a detailed Stipulation of Facts, which set forth the facts comprising the offense of conviction and the relevant conduct for that offense. (ECF No. 58 at 8-9). Leggette stipulated that on May 14, 2008, he possessed with intent to distribute 7.54 grams of crack cocaine. He also agreed that the 9mm pistol and digital scales found in his vehicle belonged to him and that the total amount of drug attributable to him was at least 150 grams but less than 500 grams of crack cocaine. (*Id.*). In addition, the Stipulation of Facts explicitly addressed the career offender provisions of the United States Sentencing Guidelines ("guidelines"). The parties agreed

that based upon Leggette's two prior felony convictions (one for unlawful wounding and one for drug trafficking), his age at the time he committed the instant offense (32), and the nature of the instant offense (felony drug trafficking), Leggette was a career offender as defined in USSG § 4B1.1(a).  (*Id.*).

On January 5, 2010, the presiding District Judge convened a plea hearing pursuant to Rule 11, *Fed. R. Crim. P.*  At the outset of the hearing, the Court questioned Leggette regarding his competency. (ECF No. 81 at 3-4). Leggette testified that he was 34 years old; had attended two and half years of college; had no problem reading and writing; had not recently been under the care of a doctor or psychiatrist; was not using any medications, alcohol, or controlled substances; and fully understood the purpose of the hearing. (*Id.*). Leggette's counsel confirmed that his client was competent. Both Leggette and his counsel indicated that they had fully discussed Leggette's case, and Leggette acknowledged that he was completely satisfied with the legal advice he had received from his counsel. *(Id.* at 4-5)*.*

Thereafter, Leggette's counsel summarized the terms of the plea agreement for the Court. (*Id.* at 5-7). He confirmed the parties' understanding that a conviction on the second count of the indictment carried a minimum sentence of imprisonment of five years and a maximum sentence of forty years. He stated that Leggette had agreed to waive his right to appeal any sentence falling within the applicable guidelines range and further waived his right to collaterally attack his conviction and sentence except on the grounds of ineffective assistance of counsel, illegal sentence, or lack of jurisdiction of the court. The Court asked Leggette if he understood the agreement and what it required; specifically, asking Leggette if he understood that the Stipulation of Facts could be used against him for the plea, the sentencing, and even at trial. (*Id.* at 7-8). Leggette

acknowledged his understanding and verified that he had reviewed every paragraph of the agreement and stipulation with his attorney before signing it.  (*Id.* at 8).

The Court then reviewed Count Two of the indictment in detail, taking time to explain to Leggette the meaning of the key terms in the charge. (ECF No. 81 at 9-10). At the conclusion of the discussion, the Court asked Leggette to state in his own words what he had done that made him guilty of Count Two. Leggette replied, "I possessed the crack cocaine with intent to sell it. I knew I was in violation of state and federal law. I showed no regard for the law." (*Id.* at 10). Leggette's confession was followed by the testimony of Special Agent Thomas Jackson Crawford, III, of the Bureau of Alcohol, Tobacco, and Firearms, who recounted Movant's actions on the day of his arrest. (*Id.* at 13-15). Special Agent Crawford confirmed that Leggette was found in possession of distribution amounts of crack cocaine and that digital scales and a firearm were discovered in his vehicle. Special Agent Crawford also testified regarding the two predicate felony convictions that supported Leggette's career offender status. (*Id.* at 15-16). When asked by the Court, Leggette acknowledged that Special Agent Crawford's testimony was substantially correct. (*Id.* at 17).

After finding a sufficient factual basis to support the guilty plea, the Court interviewed Leggette regarding his understanding of the penalties associated with a conviction on the charge, as well as the civil and constitutional rights he would abandon by entering a guilty plea. Leggette explicitly confirmed his understanding that (1) he faced a mandatory minimum sentence of five years imprisonment and a maximum sentence of forty years; (2) his sentence could vary from any estimate supplied by his lawyer; (3) the sentence imposed was not a matter of agreement but, instead, was within the sole discretion of the Court; (4) he had no right to withdraw his guilty plea even if he

was unhappy with the sentence imposed; and (5) that the Government could use the Stipulation of Facts against him if he decided to withdraw from or violate the terms of the plea agreement. (ECF No. 81 at 18-21). Leggette further acknowledged his understanding that entering a guilty plea would result in the loss of his right to a speedy and public trial, to be presumed innocent, to call and cross-examine witnesses, and would relieve the Government of its burden to prove his guilt beyond a reasonable doubt. (*Id.* at 23-25). The Court discussed the waivers contained in the plea agreement, admonishing Leggette that they were generally enforceable. (*Id.* at 22-23). Finally, the Court questioned Leggette to insure that his plea was completely voluntary. Leggette verified that the guilty plea was his idea and was made of his own free will. When directly queried, Leggette expressed no second thoughts about pleading guilty and signed the guilty plea in open court. (*Id.* at 25).

On April 12, 2010, Leggette appeared for sentencing. (ECF No. 82). After reviewing the pretrial services report, the Court observed that the career offender provisions governed Leggette's sentence range under the guidelines. (*Id.* at 5). Given the amount of crack cocaine attributed to Leggette, his base offense level was 32; however, under the career offender provisions, the base offense level was increased to 34. (*Id.* at 7-8). The Court deducted three levels for acceptance of responsibility and applied the Criminal History Category of VI mandated by the career offender provisions, resulting in a guidelines sentence range of 188 to 235 months. (*Id.* at 8). Leggette's counsel argued for a downward variance, which the Court refused in light of Leggette's recidivism, the nature of his crimes, and the escalation of his criminal activity. (ECF No. 82 at 15-17). Nonetheless, the Court sentenced Leggette to the lowest end of the guidelines range, imposing a term of imprisonment of 188 months. (*Id.* at 19).

Thereafter, Leggette's counsel filed an *Anders* appeal, contending that the sentence imposed was unreasonable. (ECF No. 87 at 2). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") held that Leggette's waiver of appellate rights was made knowingly and voluntarily; accordingly, the waiver precluded review of the sentence. (*Id.* at 3). However, the waiver did not apply to Leggette's conviction. Consequently, the Fourth Circuit carefully reviewed the record and determined that the District Court had ensured a voluntary and intelligent guilty plea, which was supported by an independent factual basis. After looking for any meritorious ground to justify reversal of the conviction, and finding none, the Fourth Circuit affirmed the conviction and dismissed the appeal of his sentence.

On February 3, 2012, Leggette timely filed the present action seeking to set aside his conviction.

## II.   **Movant's Grounds for Vacating, Setting Aside, or Correcting His Sentence.**

Leggette states the following grounds in support of his § 2255 Motion:

1.   Lack of a voluntary and intelligent guilty plea due to the failure of trial counsel and the District Court to explain to Leggette the consequences of his guilty plea.  (ECF No. 97-1 at 6-8).

2.   Ineffective assistance of counsel prior to the plea. Leggette complains that his counsel (a) failed to raise relevant constitutional grounds in a motion to suppress evidence found in Leggette's vehicle; (b) failed to advise Leggette that he could testify at the suppression hearing; (c) failed to fully investigate the circumstances surrounding the vehicle search; (d) failed to advise the Court that Leggette did not live at the residence where he and his vehicle were found—facts which could have "nullified" the indictment; and (e) committed other errors that cumulatively deprived him of a fair trial. (ECF No. 96-1 at 3-4; ECF No. 97-1 at 12, 15, 23-26).

3.   Ineffective assistance of counsel in plea negotiations. Leggette argues that his trial counsel coerced him into entering a guilty plea. (ECF No. 96-1 at 2; ECF No. 97-1 at 8-10). According to Leggette,

counsel advised him that he would receive a life sentence if he refused to plead guilty, thus forcing him to take the guilty plea. Counsel then coached Leggette on how to answer the Court's questions at the plea hearing. Leggette contends that he "failed to grasp the entire consequences of the plea agreement." (ECF No. 97-1 at 8-10). In addition, Leggette claims that counsel never explained to him that his term of imprisonment would be longer due to "prior criminal convictions" and the "enhanced drug amounts" used by the Court to calculate his sentence. (ECF No. 96-1 at 3).

4.      Ineffective assistance of counsel on appeal. Leggette asserts that trial counsel was inadequate by failing to contest the District Court's denial of the motion to suppress evidence. (ECF No. 96-1 at 2). Leggette contends that his counsel negligently failed to file an interlocutory appeal on the suppression issue and then overlooked the issue on appeal.

5.       Actual innocence. Leggette avers that "[t]here was no indication that Leggette ever intended to possess a firearms [sic] and/or drugs." (ECF No. 97-1 at 27-28). Leggette claims that his counsel was ineffective for failing to address his innocence on appeal, (ECF No. 96 at 7); therefore, the Court should exercise its broad authority to correct "the unfortunate injustice this case represents." (ECF No. 97-1 at 27-28).

## III.   <u>28 U.S.C. §2255 and Ineffective Assistance of Counsel</u>

A motion made under 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence imposed in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. When a criminal defendant enters a voluntary and intelligent guilty plea, he or she admits the material elements of the charged crime. *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). This admission of guilt represents "a break in the chain of events which preceded it in the criminal process" and acts as a waiver of all claims relating to non-jurisdictional

errors that occurred prior to the plea, including claims relating to alleged constitutional deprivations. *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *See also United States v. McCleary,* 112 F.3d 511 (4th Cir. 1997) (unpublished). As a result, a § 2255 motion filed after a guilty plea is, for the most part, restricted to an attack on the voluntary and intelligent nature of the plea.

Here, Leggette alleges that his trial attorney provided ineffective assistance prior to and during plea negotiations, causing him to enter a guilty plea that was neither knowing nor voluntary. He also claims that counsel was ineffective on appeal by failing to challenge the District Court's denial of the motion to suppress evidence. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel during critical stages of criminal proceedings, *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), including plea-bargaining, *Lafler v. Cooper*, ___U.S.___, 132 S. Ct. 1376, 1384-86, 182 L.Ed.2d 398 (2012), and direct appeal. *Smith v. Murray*, 477 U.S. 527, 535-36, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). While assistance "which is ineffective in preserving fairness does not meet the constitutional mandate," *Strickland,* 466 U.S. at 685-86, "defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor,* 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2001).

Under *Strickland*, a defendant can prove ineffective assistance of counsel by meeting the requirements of a two-prong test. The defendant carries the burden of satisfying both prongs of the test, and "a failure of proof on either prong ends the matter." *United States v. Roane,* 378 F.3d 382, 406 (4th Cir. 1994). First, the defendant must show that counsel's representation fell below an objective standard of

reasonableness. When evaluating counsel's performance under the first prong of *Strickland,* "judicial scrutiny of counsel's performance must be highly deferential and ... court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. (internal quotation marks omitted). "The question [under *Strickland*] is whether counsel made errors so fundamental that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *Harrington v. Richter,* ___U.S.___, 131 S.Ct. 770, 778, 178 L.Ed.2d 624 (2011).

The second prong of the *Strickland* test requires the defendant to affirmatively establish prejudice; that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 687-91. In the context of a guilty plea, the prejudice prong of *Strickland* requires the defendant to demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. In the context of an appeal, the defendant must demonstrate a reasonable probability that, but for his counsel's failure to raise a particular issue, he would have prevailed on the appeal. *Smith v. Robbins*, 528 U.S. 259, 285-86, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

Under the Rules Governing Section 2255 Proceedings, a reviewing court must examine the motion, answer, any transcripts and record of prior proceedings, and any other materials supplied by the parties to determine the need for an evidentiary hearing. If the motion can be resolved based on the record before the court, an evidentiary hearing is unnecessary. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970). With this framework in mind, the undersigned examines each of Leggette's allegations.

## IV.   Analysis

### A.   Lack of Knowing and Voluntary Guilty Plea

"Prior to accepting a guilty plea, a trial court, through colloquy with the defendant, must inform the defendant of, and determine that he understands, the nature of the charge(s) to which the plea is offered, any mandatory minimum penalty, and the maximum possible penalty and various rights." *United States v. DeFusco,* 949 F.2d 114, 116 (4th Cir. 1991) (citing *Fed. R. Crim. P.* 11(c)(1)). The Rule 11 colloquy is designed to ensure that the guilty plea is both intelligent and voluntary. *See United States v. Vonn,* 535 U.S. 55, 58, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002); *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). When accepting a guilty plea, the court must address the defendant personally in open court and inform him of the rights that he is waiving by changing his plea to guilty. *Fed. R. Crim. P.* 11(b). The court also must determine whether there is a factual basis for the plea and ensure that the plea did not result from force, threats, or non-plea agreement promises. *Id.; See also DeFusco,* 949 F.2d at 119-20. If the defendant fails to understand his constitutional protections and the charges made against him, the guilty plea is invalid and should not be accepted. *Henderson v. Morgan,* 426 U.S. 637, 645, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). Nevertheless, there is no mandatory method by which to conduct the Rule 11 colloquy; instead, "[t]he manner of ensuring that the defendant is properly informed is committed to the good judgment of the district court, to its calculation of the relative difficulty of comprehension of the charges and of the defendant's sophistication and intelligence." *United States v. Reckmeyer,* 786 F.2d 1216, 1221 (4th Cir. 1986) (*citing United States v. Dayton,* 604 F.2d 931, 938 & n. 11 (5th Cir.1979) (en banc)).

- 11 -

The record of the Rule 11 hearing provides the best evidence of a defendant's understanding of the effect and consequences of a guilty plea. Thus, when evaluating a subsequent attack on the validity of a plea, the court necessarily allocates substantial weight to the defendant's statements made during the hearing. As a general rule, statements made during the hearing are presumed to be true; therefore, allegations made in a § 2255 motion that contradict those statements may be rejected as frivolous.

*U.S. v. Lemaster,* 403 F.3d 216 (4th Cir. 2005). The Fourth Circuit explained that:

> [A] defendant's solemn declarations in open court ... 'carry a strong presumption of verity ... because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy ... Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.

*Lemaster,* 403 F.3d at 221–22 (citations omitted). "To adopt a more lenient approach and 'allow indiscriminate hearings in federal post-conviction proceedings ... would eliminate the chief virtues of the plea system-speed, economy, and finality.'" *Id.*

In this case, the Fourth Circuit examined the sufficiency of the Rule 11 colloquy on appeal and found that the District Court "fully complied with the mandates of Fed. R. Crim. P. 11 in accepting Leggette's guilty plea." (ECF No. 87 at 3). According to the Fourth Circuit, "[t]he [trial] court ensured that the plea was voluntary, knowing, and supported by an independent factual basis." (*Id.*) Indeed, the record of the Rule 11 hearing establishes that Leggette was fully advised of the nature of the charge against him, the mandatory minimum and maximum penalties, the constitutional and civil rights lost by entering a guilty plea, and the effect and consequences associated with the plea agreement and Stipulation of Facts. Leggette acknowledged his understanding of

these matters and affirmed that his decision to enter a guilty plea was made freely, voluntarily, and after due consideration. Accordingly, the undersigned **FINDS** that (1) Leggette's guilty plea was voluntary and intelligent and (2) the District Court fully complied with the Federal Rules of Criminal Procedure in accepting his plea. Consequently, Leggette's first ground is without merit.

**B.    Ineffective Assistance Prior to Guilty Plea**

Next, Leggette supplies a laundry list of criticisms relating to his counsel's pretrial investigation and management of a motion to suppress evidence found in Leggette's vehicle. In light of Leggette's knowing and voluntary guilty plea, the undersigned finds these allegations to be frivolous. As stated *supra*, a voluntary and intelligent guilty plea constitutes a waiver of all claims relating to non-jurisdictional errors that occurred prior to the plea, including claims relating to alleged constitutional deprivations. *U.S. v. Partlow*, 301 Fed.Appx. 297 (4th Cir. 2008) (citing *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)); *see also United States v. McCleary*, 112 F.3d 511, 1997 WL 215525 (4th Cir. 1997) (unpublished). Consequently, the undersigned **FINDS** that Leggette is precluded from raising the adequacy of pretrial investigation and the motion to suppress in this collateral attack.

Even if Leggette could clear the waiver hurdle, his arguments nonetheless fail on their merits because Leggette simply cannot sustain both prongs of the *Strickland* test. First Leggette contends that counsel was ineffective for failing to address "the Fourth Amendment violations [by law enforcement] at the suppression hearing." This contention is factually incorrect. To the contrary, Leggette's counsel based his motion to suppress entirely upon alleged violations of the Fourth Amendment. At the suppression hearing, counsel thoroughly cross-examined the Government's witness and argued

strenuously that the search of Leggette's vehicle was an unreasonable warrantless search. Counsel was not ineffective merely because the Court ruled against him on the motion.

Next, Leggette contends that counsel was ineffective for failing to "properly and diligently investigate the petitioner's criminal case by questioning witnesses, visiting the crime scene and other locations, examining physical evidence, canvassing and marshalling facts and evidence in defense of the petitioner." (ECF No. 97-1 at 23). To provide effective assistance, defense counsel must make a reasonable investigation of the charges or make a reasonable decision that particular avenues of investigation are unnecessary. *Strickland,* 466 U.S. at 690–91. The measurement of reasonableness is "not what is prudent or appropriate, but only what is constitutionally compelled." *Burger v. Kemp,* 483 U.S. 776, 794, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987) (quoting *United States v. Cronic,* 466 U.S. 648, 665, n. 38, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)). To successfully argue that counsel was ineffective, the defendant must identify useful evidence that would have been collected through further investigation. *See Bassette v. Thompson,* 915 F.2d 932, 940–41 (4th Cir. 1990). In the present case, Leggette offers no particulars regarding the nature of additional investigation that should have been done and the beneficial evidence that would have been discovered. In addition, Leggette makes no assertion that but for the lack of pretrial investigation he would not have pled guilty and would have insisted on going to trial. Consequently, Leggette is unable to satisfy either prong of the *Strickland* test on this ground.

Leggette also complains that his counsel failed to advise the court of a "conflict of interest;" that being, counsel's refusal to seek an interlocutory appeal of the Court's

denial of the suppression motion notwithstanding Leggette's insistence that an interlocutory appeal be filed. (ECF No. 97-1 at 23-24). The Sixth Amendment's right to effective assistance of counsel includes a right to counsel "unhindered by conflicts of interest." *Mickens v. Taylor,* 240 F.3d 348, 355 (4th Cir.2001) (en banc) (citing *Cuyler v. Sullivan,* 446 U.S. 335, 345-50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *United States v. Tatum,* 943 F.2d 370, 375 (4th Cir.1991)). "To establish ineffective assistance of counsel on conflict of interest grounds, a [defendant] must establish that (1) his attorney labored under 'an actual conflict of interest' that (2) 'adversely affected his lawyer's performance.'" *Id. (quoting Sullivan,* 446 U.S. at 348). To show that the conflict of interest actually affected counsel's performance, the defendant "must satisfy, by a preponderance of the evidence, the three-part standard established in *Mickens v. Taylor.*" *United States v. Nicholson,* 611 F.3d 191, 197 (4th Cir. 2010). Citing to *Mickens v. Taylor,* the Fourth Circuit explained defendant's burden as follows:

> He must, first of all, 'identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued.' Second, he must establish that 'the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision.' In order to satisfy this second prong, 'the [defendant] must show that the alternative strategy or tactic was 'clearly suggested by the circumstances.' Lastly, he must show that 'the defense counsel's failure to pursue that strategy or tactic was linked to the ... conflict.' In establishing these three aspects of this test, the [defendant] is not required to show that the strategy or tactic not taken would have been successful, but only that it would have been objectively reasonable.

*Nicholson,* 611 F.3d at 197 (internal citations omitted). Here, Leggette supplies no tangible evidence of a conflict of interest or specifies a plausible and objectively reasonable alternative defense strategy that might have been pursued. Although he claims that his conflict with trial counsel "entirely destroyed the attorney client relationship," his allegations are belied by his statements at the Rule 11 hearing. When

asked by the Court, "Are you completely satisfied by the legal advice [counsel's] given you," Leggette unequivocally answered in the affirmative. (ECF No. 81 at 5). Furthermore, this testimony was consistent with Leggette's prior written acknowledgement in the plea agreement that he was satisfied with the representation of counsel. (ECF No. 58 at 7). Leggette is equally hard-pressed to identify a plausible strategy or tactic that counsel might have pursued. It is well-settled that a defendant is precluded from filing an interlocutory appeal of an adverse ruling on a suppression motion. *DiBella v. United States*, 369 U.S. 131-32, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); *See also United States v. Nesbitt*, 392 Fed. Appx 233 (4th Cir. 2010) (unpublished). As such, filing a frivolous interlocutory appeal with the Fourth Circuit was not an objectively reasonable strategy for counsel to pursue. Counsel properly refused Leggette's demand for the obvious reason that such an appeal would not have been successful or beneficial to Leggette's interests.

Leggette's final criticism is that the cumulative effect of his counsel's pretrial errors denied him the right to a fair trial. (ECF No. 97-1 at 25-26). "In *Fisher v. Angeleone,* 163 F.3d 835, 852 (4th Cir. 1998), the Fourth Circuit held that 'legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error.'" *Greene v. Hoke*, 2009 WL 774491 (S.D.W.Va. 2009). "Thus, in order for a cumulative error analysis to apply, the court must first find that there have been actual constitutional errors." *Id.*; *see also Daniel v. West Virginia*, 1999 WL 713865, *8 (4th Cir. 1999) ("Cumulative effect analysis only applies where there are two or more actual errors, not to the cumulative effect of non-errors.). Here, Leggette has made no case supporting a single constitutional error, much less cumulative errors.

Therefore, the undersigned **FINDS** that Leggette fails to establish pretrial ineffective assistance of counsel and, thus, is not entitled to relief on this ground.

### C.    Ineffective Assistance During Plea Negotiations

Leggette claims that his counsel "coerced" him into pleading guilty and failed to explain to him that his sentence would be "enhanced" by his prior record and attributed drug amount. (ECF No. 96-1 at 2-3). Leggette argues that he did not understand the significance of his guilty plea, was denied the right to testify at trial, and was prevented from proclaiming his innocence.

When evaluating a § 2255 motion, the district court should assess whether any of the allegations, "when viewed against the record of the [Rule 11] plea hearing, [are] so palpably incredible, so patently frivolous or false as to warrant summary dismissal." *United States v. White,* 366 F.3d 291, 296-97 (4th Cir. 2004). Allegations that clearly contradict the movant's prior sworn statements are suspect and, absent extraordinary circumstances, should be rejected as frivolous. Moreover, issues that have already been expressly decided by an appellate court on direct appeal may not be raised in a collateral action unless there has been an intervening change in the law that allows a movant the right to re-litigate the issues. *Boeckenhaupt v. United States,* 537 F.2d 1182, 1183 (4th Cir. 1976).

At the Rule 11 hearing, the District Court specifically asked Leggette if anyone forced him, threatened him, or talked him into pleading guilty against his will. Without hesitation, Leggette answered in the negative. (ECF No. 81 at 25). In addition, Leggette agreed that he was acting voluntarily and of his free will and that pleading guilty was his own idea. (*Id.*). He expressed satisfaction with his lawyer and made no statements suggesting that his lawyer had in any manner coerced his guilty plea. Leggette listened

to counsel review the terms of the plea agreement and advised the Court that he understood the agreement and what it required of him. (*Id.* at 7). He confirmed his understanding that a guilty plea would deprive him of his right to a trial and would expose him to a sentence as long as forty years. (ECF No. 81 at 18, 23). He acknowledged having discussed the sentencing guidelines with his counsel and appreciated that the Court had sole discretion in determining the length of his sentence. (*Id.* at 20).

Similarly, in the written plea agreement, Leggette signed an acknowledgment verifying that no one threatened or forced him in any way to enter into the agreement and he was satisfied with his counsel's representation. (ECF No. 58 at 7). He provided written assurances that he had read and carefully discussed every paragraph of the agreement with his lawyer and fully understood its terms and conditions. (*Id.*). Further, Leggette agreed in the Stipulation of Facts that he was guilty of the crime charged, was responsible for 150 to 500 grams of cocaine base, possessed scales and a firearm at the time of arrest, and qualified as a career offender under the sentencing guidelines. (*Id.* at 8-9). Leggette expressly verified the two felony convictions that triggered application of the career offender provisions. Moreover, at the sentencing hearing and in Leggette's presence, his counsel volunteered to the Court that he had fully discussed with Leggette the increased guidelines range associated with the career offender provisions. (ECF No. 82 at 4). Leggette did not dispute that representation. In fact, when providing his statement in mitigation of punishment, Leggette expressed no surprise at the applicable guidelines range or confusion over the impact that his prior record had on the sentence to be imposed. Instead, he merely asked the Court for leniency. (*Id.* at 18).

The record establishes that Leggette was fully aware of the consequences of his guilty plea and understood the impact of the career offender provisions on his potential

sentence. Further, the record is devoid of evidence indicating that Leggette's counsel coerced a guilty plea. If counsel encouraged Leggette to enter into the plea agreement, such advice did not constitute coercion or undue influence as counsel had an obligation to advise Leggette on the potential outcome of a trial and provide guidance on the available alternatives. *Muse v. Slayton,* 333 F. Supp 1007, 1009 (D.C. Va. 1971) (*citing Schnautz v. Beto,* 416 F.2d 214 (5th Cir.1969); *St. Clair v. Cox,* 312 F.Supp. 168, 170 (W.D.Va.1970); *Brown v. Smyth,* 271 F.2d 227 (4th Cir. 1959)). Leggette repeatedly expressed his understanding of the plea agreement and the consequences of entering a guilty plea. He denied that his guilty plea was anything other than his own reasoned decision. The unsupported allegations currently made by Leggette simply cannot overcome the "formidable barrier" created by his prior statements and stipulations. *Blackledge v. Allison,* 431 U.S. 63, 73–74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Equally as important, the Fourth Circuit previously considered the validity of Leggette's guilty plea and found it to be "voluntary, knowing, and supported by an independent factual basis." (ECF No. 87 at 3). Leggette supplies no basis upon which to re-litigate this determination. Therefore, the undersigned **FINDS** Leggette's claim of coercion is frivolous.

### D.    Ineffective Assistance on Appeal

Leggette argues that counsel was ineffective for failing to specifically appeal the denial of his suppression motion. (ECF No. 97-1 at 13). Counsel filed an appeal on behalf of Leggette pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d493 (1967), representing that there were no meritorious issues for appeal but arguing that Leggette's sentence was unreasonable. (ECF No. 87 at 2). The Government moved to dismiss the appeal based on Leggette's waiver of appellate rights. The Fourth

Circuit examined the written waiver contained in the plea agreement and the transcript of the Rule 11 hearing, conducting a *de novo* review of the validity of the waiver in light of the totality of the circumstances. After scrutinizing the record, the Fourth Circuit concluded that Leggette had knowingly and voluntarily waived his right to appeal his sentence. Because the issue raised on appeal fell squarely within the scope of the waiver, the Fourth Circuit dismissed the appeal. (ECF No. 87 at 3).

Nonetheless, the Fourth Circuit observed that the appellate waiver did not apply to Leggette's conviction. Accordingly, in keeping with the holding in *Anders*, the Court proceeded to review the entire record for meritorious issues and found none.[2] In particular, the Fourth Circuit considered the Rule 11 colloquy and confirmed that the District Court had fully complied with the mandates of Rule 11 by ensuring that Leggette's guilty plea was made knowingly and voluntarily and was supported by an independent factual basis.   (*Id.*).

To succeed on his claim of ineffective assistance of counsel in the context of alleged appellate errors, Leggette must demonstrate a reasonable probability that, but for his counsel's failure to raise a particular issue, he would have prevailed on the appeal. *Smith v. Robbins*, 528 U.S. 259, 285-86, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). Given that the Fourth Circuit found Leggette's guilty plea to be voluntary and intelligent and noting that a voluntary and intelligent guilty plea constitutes a waiver of all claims relating to non-jurisdictional errors that occurred prior to the plea, including claims relating to alleged constitutional deprivations, the undersigned **FINDS** that Leggette is unable to demonstrate by a reasonable probability that he would have prevailed on an

---

[2] The Fourth Circuit advised Leggette of his right to file a *pro se* supplemental brief, but Leggette did not file a brief or raise the issue of the suppression motion on appeal. (ECF No. 87 at 2).

appeal challenging the denial of the suppression motion.

###    E.    Actual Innocence

Leggette's last ground for relief is based upon his claim that he is actually innocent of the charge to which he pled guilty.[3] (ECF No. 97-1 at 27-28). To sustain this contention, Leggette must produce clear and convincing evidence that his guilty plea "has probably resulted in the conviction of one who is actually innocent," *Bousley v. United States,* 523 U.S. 604, 623–624, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). To the extent that his claim of innocence rests on allegations that directly contradict sworn statements made during a properly conducted Rule 11 colloquy, those allegations may be disregarded as palpably incredible and entirely unreliable. *Lemaster,* 403 F.3d at 221. Considering the record before the Court, the undersigned **FINDS** Leggette's claim of innocence to be "so palpably incredible, so patently frivolous or false as to warrant summary dismissal." *White,* 366 F.3d at 296-97. Leggette entered into a plea agreement in which he unequivocally admitted to possessing 7.54 grams of cocaine base with the intent to distribute it; possessing digital scales and a firearm; being responsible for the distribution of between 150 and 500 grams of crack; and being a career offender. At the plea hearing, Leggette described in his own words what he did that made him guilty of the drug trafficking charge, stating, "I possessed the crack cocaine with intent to sell it. I knew I was in violation of state and federal law. I showed no regard for the law." (ECF No. 81 at 10). Leggette's confession was followed by testimony from a DEA agent

---

[3] It is somewhat unclear if Leggette is claiming that he is innocent of the act for which he was convicted in this case, or was innocent of one of the convictions used to support the career offender guidelines. He argues that "the court accepted [his] guilty plea knowing he was very young and without experience in dealing with the complexities of the legal system" and that his "conduct, although in violation of Texas States Laws, should not have precipitated a felony conviction against [him]." Neither of these statements makes sense in either context. In this case, Leggette was not young and had extensive experience with the legal system by the time of his plea. On the other hand, Leggette was not convicted of a crime in Texas that was used as a predicate to the application of the career offender provisions. Regardless, Leggette produces no evidence to support a claim of actual innocence in either instance.

regarding the circumstances of Leggette's arrest. According to Special Agent Crawford, Leggette was seen fleeing from the scene and was observed throwing an article behind his back that was later found and identified as a bag containing four baggies of crack cocaine packaged for distribution. (*Id.* at 13-14). Crawford testified that Leggette also admitted to ownership of the firearm found in his vehicle. Finally, Crawford confirmed Leggette's prior felony convictions for possession with intent to distribute cocaine and unlawful wounding. After Special Agent Crawford finished his testimony, and upon questioning by the Court, Leggette acknowledged that Crawford's sworn statements were "substantially correct." (*Id.* at 17).

To refute the sworn statements he made at the hearing, Leggette offers nothing more than a confusing and factually unsupported argument. He provides no plausible explanation for why he would plead guilty if he was innocent of the charges. Moreover, Special Agent Crawford's testimony supplies independent and convincing evidence of Leggette's guilt. Unquestionably, Leggette fails to produce the evidence necessary to support a contention of actual innocence. Consequently, the undersigned **FINDS** that Leggette's claim of innocence is palpably incredible and should be summarily dismissed.

## V.   <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** the following:

1.   Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 96) be **DENIED**; and

2.   This civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is

hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Movant, Respondent, and any counsel of record.

**FILED**:  January 7, 2013

Cheryl A. Eifert
United States Magistrate Judge